# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 27, 2013

## STATE OF TENNESSEE v. SAMPSON JOSEPH MCCOY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1123     Cheryl Blackburn, Judge**

---

**No. M2012-01438-CCA-R3-CD - Filed May 6, 2013**

---

The appellant, Sampson Joseph McCoy, pled guilty in the Davidson County Criminal Court to aggravated assault and received an eight-year sentence. Pursuant to the plea agreement, the trial court was to determine the manner of service of the sentence. After a sentencing hearing, the trial court ordered that the appellant serve his entire sentence in confinement. On appeal, the appellant contends that the trial court erred by denying his request for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jeffrey A. DeVasher (on appeal) and Mike Engle (at trial), Nashville, Tennessee, for the appellant, Sampson Joseph McCoy.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In April 2011, the Davidson County Grand Jury indicted the appellant for attempted second degree murder and employing a firearm during the attempt to commit a dangerous felony. In September 2011, he pled guilty to aggravated assault as a lesser-included offense of attempted second degree murder, and the State dismissed the remaining charge.

At the appellant's guilty plea hearing, the State gave the following factual account of the crime:

> [O]n January the 16th, 2011, in Davidson County the victim in this case Tony Hall was standing with a group of friends at a club downtown called Decades. The defendant approached the group. An argument ensued. And the defendant ended up pulling a gun. The victim lunged at him. They ended up in a scuffle on the ground. Some more shots were fired causing injury to Mr. Hall. He had a gunshot to his abdomen and also to his leg. And the defendant fled the scene.

Pursuant to the plea agreement, the appellant received an eight-year sentence as a Range I, standard offender with the manner of service to be determined by the trial court.

At the appellant's sentencing hearing, the then thirty-year-old victim testified that in January 2011, he worked at Decades, a nightclub. On the night of January 15, he worked at the club. He said that after work, he was "hanging out a little bit . . . , playing some music and stuff" with friends. He said that he had been drinking alcohol, which affected his ability to recall the night's events, but that "I do remember some of what happened." About 4:30 a.m. on the morning of January 16, the victim was standing outside Decades and was smoking a cigarette. Two men, one of whom was the appellant, began arguing with him. The appellant was standing about six feet away from the victim, pulled out a gun, and pointed it at the victim. The victim said that he did not have a weapon and did not physically threaten the appellant but that he "rushed at" the appellant because he "didn't want to die." He acknowledged that his objective was to get the gun away from the appellant. The appellant shot him in the thigh, and they wrestled to the ground. The victim got behind the appellant and began choking him. The victim stated that as they were struggling, the appellant "reached around" and shot him "point blank" in the stomach.

The victim testified that he did not remember much about what happened after the shooting. He said that he spent eight days at Vanderbilt Hospital and that his abdomen was "open." He could not defecate for five days, and his injuries were very painful. He said that he could not work for two months and that he still experienced sharp pain when he exercised or "sprint[ed]." As a result of the shooting, the victim had scars from the bullet wounds and a nine-inch-long scar on his abdomen. He said the appellant should serve the entire sentence in confinement because the appellant almost killed him.

On cross-examination, the victim testified that he did not remember testifying previously that the appellant lifted the appellant's shirt and displayed a handgun in the

appellant's waistband. The victim said he just remembered the appellant's pointing the gun at him. He acknowledged that the appellant shot him as he approached the appellant and that they wrestled. He also acknowledged that the appellant shot him the second time as they were on the ground and "embraced in this wrestling." Upon being questioned by the trial court, the victim said that he had not seen the appellant in Decades before the shooting.

Thomas Lawrence, an ex-police officer, testified for the appellant that he managed the apartment complex at 1046 and 1044 Jefferson Street, that the appellant lived in one of the apartments at the time of the shooting, and that he came into contact with the appellant numerous times. The appellant was very pleasant and would ask if Lawrence needed help if the appellant saw him working outside. Lawrence said the appellant was never late with his rent and was "awesome." Lawrence said he was used to dealing with thugs in the neighborhood, so his experience with the appellant was unusual. He said he was shocked when he learned about the shooting because he had "never seen that attitude" from the appellant.

Reuben Dockery testified that he was the Pastor at Bethel Family Church and the Founder and Executive Director of Building Families and Communities, a local nonprofit "in part designed to help young men who have had braces with the law . . . to kind of refine themselves and redevelop themselves." He met the appellant in 2008 when the appellant attended a conference at Dockery's church. The appellant worked with Dockery for a period of time, and then they lost track of each other. Dockery said that he had visited the appellant in jail recently and that the appellant was receptive to his visit. The appellant needed to acknowledge the gravity of the circumstances in this case and develop a plan to avoid similar circumstances in the future. Dockery stated that if the court released the appellant into the community, he "[a]bsolutely" would be involved in the appellant's life and would prepare a life plan for the appellant that included employment, education, spiritual development, and positive activities in society.

Addie McCoy, the appellant's mother, testified that her family was very close and that she had attended every court appearance for her son. The appellant was very remorseful for the crime. After the shooting, he told McCoy that he could not believe he had shot a man and that he was sorry it happened. If the trial court released the appellant from confinement, the appellant could live with McCoy and his siblings. McCoy said she would drive him to and from work and take him wherever he needed to go. She said that the appellant had been offered employment recently, that she was strict, and that he would have to abide by her rules.

On cross-examination, McCoy testified that she found out about the shooting on January 26, 2011, when the appellant told her. The police arrested the appellant two days

later. McCoy acknowledged that the appellant did not turn himself in to police right away. She said he had never been to juvenile court and did not have any children. McCoy acknowledged that the appellant received a citation for simple possession of cocaine in December 2005. To her knowledge, he did not use drugs. McCoy knew before the shooting that the appellant was carrying a gun. She told him to get a handgun carry permit for it, but he told her that he could not take time off from work to get one. McCoy told him that he should not have a gun without a permit.

Upon being questioned by the trial court, McCoy testified that she learned the appellant was carrying a handgun about two months before the shooting. She said the appellant told her that he shot the victim because the victim "stepped on his toe or something like that." McCoy told the appellant to turn himself in. She said that the appellant was planning to turn himself in and that officers stopped her and arrested the appellant as she was driving him back to his apartment.

The appellant testified that he bought the handgun used in the shooting from Academy Sports in August or September 2010 because he thought he needed protection and that having the gun on January 16, 2011, was "one of the biggest mistakes of [his] life if not the biggest." On the morning of the shooting, the victim was standing in front of Decades. The appellant said the victim "was staggering and he kind of bumped into me and stepped on my foot." The appellant told the victim, "[E]xcuse you." The appellant said the victim "got in [his] face" and told him, "I don't think you're anybody to be excusing me." The appellant felt threatened and pulled the gun to deter the victim from advancing toward him. A friend of the victim tried to get between them and hold back the victim, but the victim resisted his friend and continued to move toward the appellant. After the appellant shot the victim, the appellant ran away. He left his jacket at the scene. The stub from his last paycheck was in his jacket pocket.

The appellant testified that upon his release from confinement, he planned to continue helping take care of his family, obtain a job, and find a place to live. He said he also planned to have a "normal drama free life." He acknowledged that an employer, Command Center, was willing to hire him. The appellant had been drinking alcohol before the shooting. He said that he owed the victim a lot of money and acknowledged that he could not compensate the victim for the emotional stress he caused. He said that he received a diploma of graduation from Cedarcreek Schoolhouse Academy; that he had been in jail since January 28, 2011; and that he obtained his GED in jail. He acknowledged that he received an "outstanding score" on the GED examination. The appellant also completed a two-month vocational life skills program offered by the sheriff's department and a program offered by New Life Ministries. He said he should receive alternative sentencing because he "went twenty-six years" without getting into "major trouble," had never been in a juvenile facility,

-4-

and had an employment history. He said that his family members had been very supportive and that he let them down.

On cross-examination, the appellant testified that he had been to a few bars before the shooting. He said that he had used marijuana and cocaine in the past but that he had not consumed drugs before the crime. He acknowledged that he was charged for simple possession of cocaine in 2005, that he completed a drug and alcohol course, and that the charge was dismissed. The appellant also acknowledged that he broke the law by carrying a concealed weapon, but he denied approaching the victim or calling the victim's girlfriend a "bitch." The appellant did not pull out the gun until the victim advanced toward him and the victim's friend tried to restrain the victim. The victim was six to eight feet away from the appellant when the appellant pulled out the gun. The appellant acknowledged that he could have walked away and said that he never aimed the gun directly at the victim. After the shooting, the appellant hid under a bridge for about thirty minutes. He did not call 911. The police later found the gun in plain view in his apartment.

Upon being questioned by the court, the appellant testified that he completed his senior year of high school "through homeschooling" and that he received a homeschooling certificate. He stated that although he had the certificate, he obtained his GED in jail because "it was a personal challenge to myself to see how good I could do on the GED." Before the shooting, the appellant had been in downtown Nashville passing out flyers to promote a nightclub. He went into one or two bars that night, consumed alcohol in the bars, and carried the gun with him. He said he "made a bunch of stupid mistakes" and used poor judgment prior to his altercation with the victim. The appellant made a statement on his own behalf and apologized to his family and the victim.

The State introduced into evidence the appellant's presentence report. According to the report, the then twenty-seven-year-old appellant graduated from high school in May 2003 and took Information Technology classes at High-Tech Institute from November 2004 to April 2005 but dropped out due to lack of interest. In the report, the appellant described his mental health as "good" and his physical health as "fair" with rare attacks of asthma. He also reported that he had a work-related injury in 2007 that resulted in surgery on his arms and reduced arm strength. The appellant stated in the report that he began consuming alcohol when he was sixteen years old, marijuana when he was fourteen, and cocaine when he was twenty but that he had not used marijuana or cocaine in several years. The report shows that the appellant was charged with drug possession when he was twenty years old but that the charge was dismissed. According to the report, the appellant worked for Plasticycle as a laborer from October 2007 to June 2008, when his arms became stuck in a bailer machine. The appellant also worked for Command Center as a laborer from February 2008 to October 2009; Select Staffing as a machine operator from October 2009 to March 2010; and RR

Donnelley as a machine operator from March 2010 to July 2010.

At the conclusion of the hearing, the trial court concluded that the appellant should serve his entire sentence in confinement based upon the circumstances of the offense. The trial court noted that the appellant had "a lot of factors going for him," particularly that he had done well while in confinement and that people spoke well for him at the sentencing hearing. However, the trial court also noted that this was a "pretty serious offense" and that the appellant had been illegally carrying a weapon and drinking alcohol prior to the shooting. The court went on to explain,

> Now, the first shot perhaps -- he says that he did the second shot because he was in fear of his life, but the first one clearly was not. He admits he was wrong. I guess I kind of just have to decide. This is a very difficult case because normally I have individuals who have long records or we've tried something unsuccessfully. But this is a particularly horrible, shocking, reprehensible offense. I don't have any leeway with regard to this because he's been in custody since January the 28th of 2011. So it just comes down to what is the appropriate thing to do in this case. It's a very difficult decision for the Court, obviously because of so many good and bad factors involved in this. And, Mr. McCoy, you make a good witness, you represent yourself pretty well. Mr. Hall on the other hand was seriously injured over nothing, over no good reason. And the basic problem is that there was a gun involved. Had this been a fight we wouldn't even be here. But instead we have a weapon used that almost takes Mr. Hall's life. He describes a very, very serious situation. He will have trouble the rest of his life as a result of it. I think I'm going to have to come down on the situation that this is something that's particularly violent, particularly horrifying, shocking, or reprehensible.

The trial court denied the appellant's request for alternative sentencing.

## II. Analysis

The appellant contends that the trial court erred by imposing a sentence of continuous confinement. The State argues that the trial court did not abuse its discretion in ordering the appellant to serve eight years in confinement. We agree with the State.

In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Even more recently, the court specifically held that the abuse of discretion standard, with a presumption of reasonableness, applies to a review of a denial of alternative sentencing. State v. Christine Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The appellant contends that the trial court erred by denying his request for alternative sentencing because the "trial court's reliance on the defendant's use of a weapon and the victim's injuries would effectively exclude probation for an offense – aggravated assault committed with a deadly weapon or by causing serious bodily injury – that the legislature has determined to be probation-eligible." He argues that he should have received a sentence alternative to confinement because he is a excellent candidate for rehabilitation, has no criminal record, has secured employment and housing upon release, and has expressed sincere remorse for his actions.

While we can appreciate the trial court's hesitance to deny alternative sentencing in this case, we can also appreciate the trial court's ultimate determination that the appellant should serve his entire sentence in confinement. The trial court was troubled by the appellant's use of a firearm and the victim's serious injuries. However, the trial court also was greatly troubled by the fact that the appellant had been drinking alcohol and carrying his weapon into bars prior to the shooting. Moreover, the appellant testified at the sentencing hearing that he confronted the victim after the victim bumped into him and stepped on his foot. As noted by the trial court, his altercation with the victim began and quickly escalated to the shooting "over nothing." In denying full probation to avoid depreciating the seriousness of the offense, the criminal act should be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. Zeolia, 928 S.W.2d at 462. Given the facts of the case, we conclude that the circumstances here are indeed offensive, excessive, and of an exaggerated degree, as the trial court found. Therefore, the seriousness of the offense alone supports the denial of alternative sentencing, and the trial court did not abuse its discretion by ordering that the appellant serve his sentence in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE